**DAVID FORD, Plaintiff**

v.

**WENDELL BREWSTER, 48 West 116th Street, New York,
New York and EUCLID BREWSTER, 48 West 116th Street,
New York, New York, Defendants**

Civil No. 565-70

Municipal Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

February 9, 1972

JOHN B. NICHOLS, Christiansted, St. Croix, V.I., *for defendants*

ALBERT SHEEN, Christiansted, St. Croix, V.I., *for plaintiff*

JOSEPH, *Judge*

## MEMORANDUM

David Ford filed this action in equity seeking to reform an executed deed conveying a tract of land in excess of one acre to his two stepsons, the defendants in this case. Plaintiff contends that he mistakenly transferred the wrong tract of land to defendants, and that the latter were aware of the mistake at the time of the transaction but fraudulently failed to disclose the error to the plaintiff.

Plaintiff's chronology of this case is as follows. Some time in 1963 Ford's wife, the mother of the defendants, Wendell and Euclid Brewster, received a letter from Wendell with ten 100 dollar bills and a request to purchase a piece of land for him. The letter stated further that since the son, Wendell, was expecting a divorce soon from his wife, it was advisable and agreeable to the former that the title on the purchased land not be taken in his name.

Pursuant to this request, Ford and his wife, Marie, on or about October 28, 1963, entered into a contract of sale with Sinclair Johnson for the purchase of Plot No. 5AB of Estate Colquohoun, Mount Pleasant, Kings Quarter, containing 0.5 acres. According to plaintiff, Johnson quoted a sale price of $1500.00. Mr. Ford does not remember the amount paid, but he recalls that Mr. Johnson took less than $1500. This transaction was handled by Mrs. Ford. The amount in excess of $1000.00, plaintiff claimed he paid from his own bank account. Title was taken in the name of Ford and his wife, as evidenced by the warranty deed submitted into evidence.

On June 20, 1967, Ford and his wife purchased another plot of land from Johnson (Plot No. 5BF). This 1.0463 acre tract was also located in Estate Colquohoun. Plaintiff testified that he paid $3500 down on this piece of land and

paid $100 a month until the full purchase price of $5,000 was satisfied. Ford admitted on cross examination that his wife actually made the payments including the downpayment since he could not see well.

On December 30, 1967, plaintiff and his wife, who was terminally ill with cancer at the time, executed a deed of gift of Plot No. 5BF to Wendell and Euclid Brewster, as tenants in common. Wendell Brewster had arrived from the mainland after being informed of the seriousness of his mother's illness. Ford claims he reminded Brewster of the need for arranging transfer of the land although plaintiff contends it was the other half acre plot of land which was purchased earlier that he intended to convey to his stepson. When the deed of gift was signed, according to Ford, either his stepson or one of his aunts who were also present, acknowledged plaintiff's vision impairment (from prior operations for glaucoma) and "they held my hand on a line and told me to write my name".

The signing took place at the home of Mrs. Juanita Sheen, the sister of Mary [sic] Ford. The deed was brought to the home by Mrs. Blanche Rodriquez, a notary and secretary employed by the law firm of Young and Isherwood. Plaintiff admitted that Mrs. Rodriquez read the deed to him although he didn't understand it because "I wasn't thinking because I was so sick a man". Ford testified he didn't think the deed was read to his wife because "she was on the bed groaning, that is all she was doing".

In March, 1968, according to plaintiff, he found out from his own son that the wrong tract of land had been transferred. He proceeded to contact Mrs. Blanche Rodriquez, informed the Brewsters of the alleged mistake, and then retained his own counsel in 1969.

Wendell Brewster testified that he never sent any money to his mother and stepfather for the purchase of land in 1963. Brewster claimed he was living in St. Croix at the

time, after coming down from New York to where he returned in June, 1964. According to Brewster, he sent $1000 to the Ford's in 1966.

Mrs. Rodriquez testified that she read the deed out loud and then explained it in her own words. She asked Mrs. Ford if she knew what she was signing, and the latter replied in the affirmative. Mrs. Rodriquez indicated that Mrs. Ford appeared to be in full command of her faculties and signed the deed herself without assistance. This witness testified that plaintiff also signed the deed by himself, without the aid or assistance of anyone, noting that "he looked at the deed first. He raised it up to the light. He raised it up then he signed."

Mrs. Juanita Sheen testified that she was in the room when Mrs. Rodriguez began reading the deed; she also stated that she heard the secretary turn to Mr. Ford and ask him if he understood everything and the plaintiff replied that he did. Mrs. Sheen also confirmed that plaintiff held up the deed and signed it himself. This witness further testified that she overheard her sister (Mrs. Ford) tell plaintiff ". . . you see that is for the boys, along with the help for what they sent and this half acre will be for you and your lawful son."

St. Clair [sic] Johnson's widow testified that Mrs. Ford dealt with her husband concerning the purchase of land in both 1963 and 1966. Mrs. Johnson stated that she showed the land involved on both occasions to Mrs. Ford, and actually handled the transaction in 1966 since her husband was then in the hospital. During that transaction Mrs. Johnson testified that Mrs. Ford stated to her she wanted the land for her two boys and that the half acre acquired in 1963 had been for her "husband's lawful child." Mrs. Johnson further testified that she showed Euclid and Wendell Brewster the larger tract, when they came down, at Mrs. Ford's request.

Mr. Julius Cooper testified that he witnessed the signing of the deed in question and heard Mrs. Rodriquez read it and explain it in her own language to Mrs. Ford. Mr. Cooper also states that the deed was presented to Mr. Ford, who looked at it and signed it without assistance or objection. Mr. Cooper was not related to the other witness or Ford family, although he admitted paternity of children by Mrs. Ford's sister.

■■ Ford claims to have deeded the wrong tract of land, under his mistaken belief of fact with Wendell and Euclid Brewster fraudulently aware of the error. The evidence presented by plaintiff does not, in our opinion, establish a case of fraud against the defendants. Where a signer knows the general character of an instrument but is deceived as to the exact contents of the instrument, the general test for fraud is whether the signer was misled in some material particular and whether the misrepresentations of the other party or parties expressly or by necessary implication negative the existence of provisions which differentiate the instrument from one which the signer supposed he was executing. See 23 Am.Jur.2d, Section 142 at 189. Ford presented no evidence from which this court could find, expressly or implicitly, that the defendants misrepresented the identity of the land being deeded.

It is true that unfair concealment or silence where there is a duty to speak may be a sufficient ground for cancellation of a document if the fact concealed from the party seeking such relief is material. But the evidence before us does not disclose such a duty despite plaintiff's vision problems. He did not complain that he personally could not read the deed. More importantly the deed was orally read and explained to both him and his wife, and it appears clear, from the evidence, that the latter intended this larger tract of land to go to the Brewsters. There is

also evidence that the Brewsters received the land they expected to get and thought intended for them.

For similar reasons we find no merit in plaintiff's contention that he is entitled to relief on the grounds of unilateral mistake. Technically, in this regard, the proper remedy for plaintiff is cancellation of the instrument, not an action to reform the conveyance, as this proceeding is entitled.

Nevertheless, even if equitable cancellation was urged for Mr. Ford's unilateral mistake, we are not persuaded by the evidence that a mistake by plaintiff actually occurred, particularly considering the circumstances of the transaction and the careful conduct and actions of Mrs. Rodriquez, clearly a disinterested witness, in reading and explaining the deed. Moreover, the degree of incapacity alleged by plaintiff at the time of the signing—specifically that he was assisted in holding the pen—is contradicted by all the other witnesses testifying as to what occurred during the episode including Mrs. Rodriquez.

Even if we found that plaintiff perhaps embellished his version of the signing but was indeed innocently ignorant of the actual land involved, we could not grant him relief since we cannot conclude from the evidence that it was inequitable for the Brewsters to receive the land. Testimony at trial shows a close relationship between Mrs. Ford, the deceased grantor, and her two older sons, and at an amicable relationship between Mr. Ford and these sons up to at least immediately after the deed of gift was signed. The evidence as to when Brewster sent his money, the fact that Mrs. Ford handled the purchasing of both tracts of land, that Brewster and his mother were both shown the one acre tract the former was deeded, and that Mrs. Ford acknowledged to her sister this land was intended for the Brewsters, was never contradicted by plaintiff.

THEREFORE, in view of the foregoing, it is hereby ORDERED, ADJUDGED, AND DECREED that plaintiff's complaint be and the same is hereby dismissed.